## LAVERENZ v. THE C., R. I. & P. R. Co.

| 56 | 689 |
| 84 | 333 |
| 56 | 689 |
| 91 | 250 |
| 56 | 689 |
| 112 | 161 |
| 56 | 689 |
| 120 | 118 |

1. **Railroads**: PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE. The rule is that, as a matter of law, a person voluntarily going upon a railway track at a point where there is an unobstructed view of the track, and failing to look or listen for danger, cannot recover for an injury which might have been avoided by so looking or listening; but when the view is obstructed, or other facts exist which tend to complicate the question of contributory negligence, it becomes one for the jury.

2. ———: ———: ———. Evidence considered and held to sustain a finding that a person who was killed while walking on the track of a railroad was not guilty of contributory negligence precluding a recovery by his administrator.

*Appeal from Scott District Court.*

FRIDAY, OCTOBER 21.

THIS is an action to recover damages for a personal injury resulting in the death of James Fisher, plaintiffs' intestate, at Wilton, Iowa, in the month of August, 1877. There was a trial by jury and verdict and judgment for the plaintiff. Defendant appeals.

*Cook & Dodge*, for appellant.

*Bills & Block*, for appellee.

ROTHROCK, J.—I. The action was commenced in the Circuit Court of Scott county, and at the March term, 1879, upon a trial, the jury returned a verdict for the plaintiff for the sum of $5,000. A motion for a new trial was sustained by the court upon the ground that it appeared from the evidence that said Fisher was guilty of such contributory negligence as to preclude any right of recovery. At the June term, 1879, of said court the cause was again tried and a verdict was returned for the plaintiff for $6,000. A motion to set aside the last named verdict was also sustained. From the order setting aside the verdict and granting a new trial the plaintiff appealed to this court, and the judgment of the Circuit Court was affirmed (see 53 Iowa, 32). When the cause was remanded to the Circuit Court the venue was changed to the District Court of Scott county. The cause was tried in that court, resulting in a judgment for the plaintiff in the sum of $6,000, and from this judgment the present appeal was taken.

To the end that the questions discussed by counsel may be fairly understood, it is necessary to give a brief statement of what we regard as undisputed and material facts in the case.

James Fisher, the plaintiff's intestate, was a farmer and dealer in live stock, and resided in Kansas. On the 27th of

August, 1877, the defendant entered into a contract with one Ward to transport four car-loads of hogs from Atchison, Kansas, to Chicago. Fisher signed the contract for Ward, and by the terms of the contract Fisher was to be transported by the same train without charge, to take care of the stock. The train arrived at Wilton, Iowa, on the afternoon of August 23. The southwestern branch of defendants' road here forms a junction with the main line, and in accordance with the usual custom a new train was made up by changing the engine and caboose car, and parties in charge of stock were required to take passage in another caboose from that used on the southwestern branch. There was a delay at Wilton of from twenty to twenty-five minutes. The train which was made up to go east consisted of some twenty-three or twenty-four cars, and when made up ready to start the engine stood fronting east and from 160 to 175 feet west of the freight depot and the train extended back west, the caboose being the last car on the west end. Some five minutes, or a very short time before the train started, Fisher was in the trainmaster's office in the depot making complaint of the slow time made in transporting the stock in his charge. From the freight depot running west there are four railway tracks nearly parallel, and from seven to nine feet apart. The main track was immediately next to the depot platform on the north. Next to that was another track on which was Fisher's train about to start east. North of that was the third track, and at the west end of the depot the fourth track branched off on the south side. A switch or cross track started from the main track near the west end of the depot, and crossed to the next track on the north. It was not customary for this train to stop so as to bring the caboose to the platform, and parties desiring to ride on the train were expected to walk back to the caboose. About the time, or before the train started, Fisher left the depot platform apparently on his way to the caboose. He was compelled to cross the main track and may have crossed some of the other tracks. He was seen, however,

walking down west in the space between the main track and the track on which his train was about to pull out. This space was about seven feet nine inches wide between the rails of the two tracks. As he walked down this space toward his train, the engine was approaching him on an up grade, labor-ing heavily, making a loud noise by steam escaping from the top, and as the evidence tends to show from the open cylinder cocks. As he approached the engine he left the space in which he was walking and went upon the main track, and walked on west. The engine which pulled in the train on the branch road had been switched over on the main track, and about the time Fisher started for his train this engine was at a water tank some distance east of the depot. It backed down to the depot and came to a stop, or nearly so, and took on two men, employes of the road. The speed of this engine was increased, and it backed west on the main track, and as Fisher walked upon that track he was struck by the end of the tender in the back and knocked down and the engine passed over him lengthwise, and he was found dead upon the track, having been crushed by the ash-pan of the engine, as is supposed. These are leading facts and about which there is no real dispute. It is impossible in an opin-ion of ordinary length to recite all the facts and circum-stances which enter into a case of this kind, and which have much to do in determining the rights and obligations of the parties. Other facts will, however, be noticed in determining the questions in the case.

It does not appear to be seriously questioned that the jury were warranted in finding that the defendant was negligent in backing the engine upon the deceased. Indeed, taking in-to consideration the fact that Fisher was a passenger upon the train, and was expected to board the caboose by cross-ing the main track at least, that the engine was backed with such speed as to overtake and throw him upon the track and crush him without being seen by those in charge of the en-gine, and the further fact that there was evidence tending at

least to show that the person in charge of the engine as engineer was incompetent to properly manage an engine, we think we would be weakening the rule holding the carrier of passengers to the highest degree of care if we should determine that there was no warrant in the evidence for finding that the employes of the defendant were negligent.

II.   The main question in the case, and that upon which counsel for appellant with confidence rely for a reversal, is

1. RAILROAD : the alleged contributory negligence of the de-
personal in-
jury : con-   ceased.   It is said that because the deceased when
tributory
negligence.   he stepped upon the main track did not look to see if the track was clear, and because he walked thereon without looking for an approaching train or engine, and while thus walking thereon was killed, his representative cannot recover.   We are required to determine whether or not under the facts and circumstances surrounding the deceased the court below should have determined as a question of law that the plaintiff was not entitled to recover because of contributory negligence.   If the plaintiff had not been killed and had brought an action for injuries inflicted, under the circumstances of this case, and it had been shown without conflict or dispute, either by his evidence or otherwise, that he started for the train after it was in motion, that he crossed the main track and entered upon the space between the tracks and was proceeding to the caboose when he met the engine, that he was not confused by the noise and discharge of steam from the top and the cylinder of the engine; that he had ample room to pass the engine by keeping in the space between the tracks without being burned or annoyed by the escaping steam; that he knew if he crossed over the rail to the south of him he would be upon a track and that with such knowledge he voluntarily went upon the track without either looking or listening for danger; there would be much reason for holding that as a matter of law he could not recover.   It is true that where a person voluntarily goes upon a railroad track, where there is an unobstructed view of the track, and fails without

excuse to look or listen for danger, as matter of law he is not entitled to recover. He must take the chances of injury from an approaching train upon himself, unless the persons in charge of the train see his danger in time to avert it. *Carlin v. C. R. I. & P. R. R.*, 37 Iowa, 316; *Benton v. Central R. R. of Iowa*, 42 Iowa, 192; *Lang v. Holiday Creek R. Co.*, 49 Id., 469; *Artz v. C., R. I. & P. R. R. Co.*, 34 Id., 153. In the last case a large number of authorities are cited upon the question as to when contributory negligence becomes a matter of law. In that case it is said that " if the view of the railroad as the crossing is approached on the highway is obstructed by any means so as to render it impossible or difficult to learn of the approach of a train, or there are complicating circumstances calculated to deceive or throw a person off his guard, then whether it was negligence on the part of plaintiff, or the person injured, under the particular circumstances of the case is a question of fact for the jury." See, also, *Moore v. Central R. R. of Iowa*, 47 Iowa, 688; and *Farley v. C., R. I. & P. R. R. Co., ante,* 337. These and many other cases which might be cited establish the doctrine beyond question that a person is not necessarily and as a question of law negligent in going upon a railroad track without looking and listening for approaching trains. Apply this rule to the case at bar and we think it was a question of fact for the jury under all the circumstances to determine whether the deceased was guilty of such negligence as to preclude a recovery. There were many circumstances proper for the consideration of the jury in determining the question. Some of these may be mentioned. The space between the tracks where the deceased was walking was about seven feet nine inches wide. About two feet of this distance was occupied by the parts of the engine and train which projected over the track. How much more was obstructed, so to speak, by escaping steam does not appear. The tracks of the switch were near where the deceased was walking. It was very proper for the jury to determine whether a person

under these circumstances might not in the exercise of proper prudence step upon the main track without even being aware that he was upon a track. In determining this the noise and confusion, the network of tracks, the fact that the train was about to leave him behind, and other circumstances, were proper subjects for consideration.

It is urged with great earnestness that the deceased had ample opportunity to board the caboose before the train started, and that he was guilty of negligence in crossing the tracks and walking along them after the train was in motion. The deceased was required to change cars. He was rightfully and properly at the depot. He was not required to go into the yard to get into the caboose while the train was being made up. It does not appear that the train had started when he left the depot. The engineer of the train testifies that when he saw Fisher, and when the accident happened, he "had just hooked on the train and started. The engine had only made two or three revolutions." No call was given to passengers that the train was about to leave. In the language of the engineer they just hooked on and started, and the jury, we think, may fairly have found that Fisher was in the space between the tracks before any attempt was made to start the train.

III. With the general verdict, the jury returned certain special findings of fact which were submitted to them at the instance of the defendant. They are as follows:

"1st. Had the decedent, James Fisher, on several occasions previous to the day when he was killed, passed through Wilton on defendant's railroad by freight or stock trains, and changed caboose car at that place? Yes.

"2. Did the said James Fisher, when he arrived at Wilton, on the day when he was killed, know, or have reason to believe, from his previous experience in changing cars at Wilton, that he would be obliged to go some distance west of the depot platform at Wilton, in order to get upon the ca-

boose car, to proceed on his journey eastward? We cannot tell.

"3d. Was the caboose car in which said James Fisher was to go east from Wilton shown to him by one of defendant's employes in time for said Fisher to have gone to said caboose car before the train started? Yes.

"4th. Did said James Fisher know, by his experience and observation at Wilton on previous trips, that engines and cars. were liable to pass along any one of the several tracks of defendant north of the depot at Wilton while the freight or stock train for the east was being made up west of the depot building? We cannot tell.

"5th. Did the said James Fisher step from the space between the tracks upon the main track of defendant's railroad, and walk lengthwise thereon, without looking to see if any engine or car might be approaching him from behind? We do not know.

"6th. If, at or just before the time said James Fisher stepped upon the track, he had looked to see if an engine or car was approaching him from behind, could he have easily avoided being struck by the engine which ran over him? No."

Upon the return of the verdict and the answers to the special interrogatories the defendant objected to the answers to the interrogatories numbered two, four and five as being insufficient, and objected to the receiving or recording of the verdict without an answer to said interrogatories. The objection was overruled.

It is insisted that if truthful answers had been made to these questions according to the evidence the general verdict must have been for the defendant. We do not think that if the second and fourth questions had been answered in the affirmative that the answers would have been inconsistent with the general verdict. The fact that Fisher knew the place of boarding a caboose, and knew that engines and cars

were liable to pass along the tracks of the railroad, would not be conclusive upon the question of his negligence.

It is insisted that the evidence conclusively shows that Fisher went upon the main track without looking to see if any engine or car might be approaching him from behind, and that therefore the answer to the fifth interrogatory should have been in the affirmative. This would not have been necessarily in conflict with the general verdict, because, as we have seen, it was for the jury to determine whether he was chargeable with negligence for not looking.

The answer to the sixth interrogatory does not appear to us to be supported by the evidence unless the jury found that "at or just before" Fisher stepped upon the track the engine was stopped at the platform to take on the two men. If he had looked and it appeared to be standing there he would not have seen an engine or car approaching him, and would not have apprehended the necessity of avoiding it. However this may be, an answer in the affirmative would not have controlled the general verdict, because, as we have said, it was for the jury to determine whether or not proper care and prudence required him, under all the circumstances, to look for the approach of an engine or cars.

IV. Some objection is made to the refusal to give an instruction asked by defendant, and to certain instructions given by the court to the jury. We have carefully examined the questions made thereon, and without setting them out here we may say that we find no error in the rulings of the court in this regard. These questions involve no principle of general interest, and as this opinion has already been sufficiently extended we must omit their discussion in detail. We are united in the conclusion that the judgment should be

AFFIRMED.