LLOYD DEAN, Appellee, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

No. 39963.

FEBRUARY 18, 1930.

REHEARING DENIED APRIL 10, 1931.

*V. R. McGinnis, L. E. Crist, W. D. Eaton,* and *J. C. Pryor,* for appellant.

*O. M. Slaymaker* and *R. E. Killmar,* for appellee.

DE GRAFF, J.—The accident in question happened approximately a mile west of Murray, Iowa, at about 1:30 o'clock in the afternoon of July 13, 1927. The plaintiff is a mail carrier, and spent the daytime, not required for the prosecution of his government duties, in cultivating some farm land, access to which was had over the private crossing where the accident occurred.

A primary highway runs along the Chicago, Burlington & Quincy Railroad right of way for some distance west of Murray. On the day in question, and just previous to the accident, the plaintiff was driving west on said highway, intending to cross the railroad track at the private crossing, in order to reach the scene of his farming operations. Upon reaching the wagon road which leads north to defendant's right of way and forms the private crossing in question, the plaintiff turned his car to the north, and followed the wagon road until the front end of his car was about on the south rail of the railroad track, at which time he saw an engine approaching from the west, traveling about 40 or 45 miles per hour. A collision resulted, as the plaintiff did not have time to cross the track or reverse his motor and back the car off the track.

The track, for several hundred yards west of the crossing, runs through a deep cut, which prevents seeing a train approaching from the west. The vision of a traveler approaching the intersection from the south continues to be obstructed until such traveler reaches a point within a few feet of the track. On the day in question, and for a considerable period of time prior thereto, tall weeds and brush had grown up along the defendant's right of way between the tracks and the side of the cut, so that the traveler's view of the track west was obstructed, on approaching from the south, until he was within three or four feet of the south rail of the track. The plaintiff was thoroughly familiar with all the conditions which then existed at the private crossing, having used it daily for a considerable period prior to the accident. The private roadway was narrow, and there was a steep grade or ascent leading from the wagon road to the railroad crossing. Plaintiff's contention (supported by the evidence) is that the cut came right up to the roadway on which he was traveling, and that the embankments resulting from the cut were 12 to 15 feet high. Plaintiff also contends that these

weeds were so thick that he could not see through them, and that they had been there for a considerable time prior to the accident. In fact, he had noticed them for some time. When he visited his farm, he went over the crossing twice. In brief, his contention is that the weeds, brush, and embankment absolutely obscured his view until his front wheels were about on the tracks. Plaintiff knew that he was sitting back approximately a distance of seven feet from the front end of his car, and according to his contention, the front end of his car would get over the south rail of the south track when he was not less than seven feet back from the rail. He knew, therefore, that, when he was about seven feet back from the south rail, his view would be absolutely obstructed to the west as to a train coming from the west. Plaintiff's eyesight and hearing were good. He testified that, when he first saw the defendant's engine, it was 40 to 60 feet from him, and traveling at from 40 to 45 miles per hour. He claims that he looked for trains from the time he turned north into the private highway until he first saw the train from the west, and that, at the time he first saw the engine, he heard the whistle, but at that time, the front wheels of his automobile were over the south rail of the south track. When the plaintiff turned north off the primary road, he was traveling at a speed of from 8 to 10 miles per hour, which speed was increased slightly. He had been running in high gear, and then shifted to intermediate, in order to make the grade or ascent about 4 feet from the railroad track, and on the approach to the tracks, was moving at from 3 to 4 miles per hour. He had traveled over the crossing that day, and concedes that the conditions were the same the first time as at the time of the accident. The plaintiff knew that passenger trains, freight trains, special trains, and single engines passed over the track in question. He testified: "As a matter of fact, I knew that trains or engines would likely come along in either direction at any time." He testified that, comparatively speaking, his car was a quiet-running car, though there was no device thereon to eliminate the ordinary noise made in its operation. There was no diverting circumstance. He could have stopped his car, under the conditions, within three or four feet, and so testified. He did not stop. There is a slight dispute in the evidence as to whether or not the engine made any noise while approaching

the crossing, and whether a whistle was sounded or the bell was rung. The engine had an automatic bell, and a considerable part of the testimony as to whistle and bell is negative in character: that is to say, that the witnesses were simply in a position to hear, but did not hear. The day was clear. There was no wind.

The primary contention of the appellant is whether or not, under the record evidence, giving plaintiff's evidence the most favorable viewpoint, the plaintiff was guilty of contributory negligence, as a matter of law. This court has repeatedly held that a person approaching a railroad crossing must recognize that it is a zone of danger, and he must be vigilant to discover the approach of trains and use reasonable care to avoid injury therefrom. Stopping or starting an automobile in perfect working condition, with good brakes, going at a low rate of speed (which facts are all shown in the instant case), is a simple movement, requiring very little time or energy. A cursory review of our own decisions is sufficient to find answer to the controlling question under the facts of the case at bar. We cite *Banning v. Chicago, R. I. & P. R. Co.*, 89 Iowa 74; *Payne v. Chicago & N. W. R. Co.*, 108 Iowa 188; *Case v. Chicago G. W. R. Co.*, 147 Iowa 747; *High v. Waterloo, C. F. & N. R. Co.*, 195 Iowa 304. We will not review these decisions *in extenso*, but a few brief sentences from some of them may be helpful to understand the pertinent and fundamental proposition. In the *Payne* case, supra, it is said that it is the duty of a person, before crossing a railroad track where obstructions block his view, to look and listen before going onto the crossing, and "* * * if, from any cause, he could not know, by looking or listening, while moving forward, whether or not a train was coming, he should have stopped until, by looking or listening, he did know that it was safe for him to cross."

In the *Case* decision, supra, it is said:

"One about to cross a railway track must take reasonable precautions for his own safety. He must sometimes stop his team and look and listen * * *."

In the *High* case, supra, it is said:

" 'It is always train time at any railroad crossing,' " but that "cases may arise where, under the proven facts, the person

injured has so failed to act as a man of ordinary care and prudence that the court must hold, as a matter of law, that he has been guilty of contributory negligence. * * * Under certain circumstances, it may be negligence for him not to stop, in order to listen for a train.''

It must be conceded that at an obstructed crossing it is the duty of the traveler to exercise a greater degree of care and caution than is incumbent upon him usually, and that there may be such circumstances in a given case that common prudence requires the traveler to stop. It is elementary that, the greater the danger, the greater the care and caution necessary for him to exercise, to constitute ordinary or reasonable care. Even the failure of the engineer to ring the bell or sound the whistle, if such be the fact, does not relieve the traveler about to cross a railroad track from the necessity of taking ordinary precaution under the circumstances which confront him. The traveler may have the right, as a general rule, to rely on the fact that a railroad company will perform its duty, either at common law or under the statute, in the operation of its train; but this fact, *per se*, does not dispense with the care to be exercised by the traveler, and he may be guilty of contributory negligence, under the facts of the particular case to the contrary notwithstanding. Each case must be determined upon its own particular facts. The instant plaintiff knew that he was in a zone of danger. He was acquainted with all of the facts of his environment when he approached the tracks of the defendant railroad company. True, it is the rule ordinarily that the question involved herein must be left to the answer of the fact-finding body. The case of *Hawkins v. Interurban R. Co.*, 184 Iowa 232, is distinguishable on the factual side from the case at bar. The instant case presents the exception to the general rule.

This private crossing was exceptionally dangerous, because trains approaching it from the west came through a deep cut, which did obscure from view the engine in question, and did deaden somewhat the noise of its approach. The presence of weeds and brush obscured a train from the view of a traveler from the south, and no traveler in an automobile coming from the south to the tracks could see a train approaching from the west until the driver had propelled his automobile almost onto the tracks themselves; and he could then see but 40 to 60 feet

to the west of him. The road approaching the track was rough and rutty, and steep enough so that it required the plaintiff to shift from high gear to intermediate, so that his car could be propelled to and over the tracks. Plaintiff, with absolute knowledge of all these facts, knew that, if he looked to the west, he could not see an approaching train. Furthermore, we may take judicial notice that a car shifted from high to intermediate gear does create and make additional noise in its operation after the shift is made. This fact would interfere somewhat with plaintiff's hearing the approach of a train. The fact is, however, that he did not stop, and the fact stands that, had he looked to the west all of the time while approaching the tracks, he could not have seen anything until his car was on, or nearly on, the tracks. Plaintiff must have known, under the circumstances, that, if he did not stop, and a train was approaching, which he could not see and could not hear, a collision would be inevitable.

We hold, therefore, that the plaintiff was guilty of contributory negligence, as a matter of law, and that the trial court erred in overruling defendant's motion for a directed verdict. —*Reversed.*

MORLING, C. J., and EVANS, ALBERT, KINDIG, WAGNER, and GRIMM, JJ., concur.