R. C. BUSH, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

No. 41780.

APRIL 4, 1933.

REHEARING DENIED SEPTEMBER 21, 1933.

Messer & Nolan, and J. G. Gamble and A. B. Howland, for appellant.

Will J. Hayek, for appellee.

 MITCHELL, J.—The appellee alleged that he was engaged in hauling brick from a freight car which was standing on a side track adjacent to the main line of the appellant's railroad in Iowa City; that appellee's truck, while crossing the main line of track of the appellant company's railroad, was struck by a train that approached from the west at a high and dangerous rate of speed; that the appellant was negligent in failing to maintain a lookout and in failing to give a warning signal far enough away from the crossing to warn appellee of the approach of the train. The appellant answered by way of general denial, with a plea of contributory negligence on the part of the appellee. At the close of the evidence, the appellant interposed a motion for a directed verdict, which questioned the sufficiency of the evidence to support a recovery. The court overruled the motion, and the case was submitted to the jury, and the jury returned a verdict for the appellee in the amount of $750.

The appellee, R. C. Bush, has lived in Iowa City about twenty years, engaged in the trucking business. He was fifty years of age at the time of the collision, and his hearing and eyesight were good. He was familiar with the surroundings. At the point of the colli-

sion, the railroad tracks, consisting of the main line and siding, extend northwest and southeast. The tracks are crossed by a public highway, known as Myrtle avenue, which extends from the northeast to the southwest. The side track is immediately north of the main line, there being about 6 feet between the tracks. There is a driveway to the north of the side track, about 12 or 14 feet in width from the north end of the ties to the side track. The appellee was engaged in unloading brick from a car on the side track. There were six or eight cars along the side track, and it was well toward the west end of the string of cars from which the appellee was unloading the brick, which were to be hauled to a new schoolhouse being constructed on West Benton street in Iowa City. This was the first day of hauling, and appellee was on his fourth load. He had never hauled brick toward the south before, although he had hauled from the side track to places north of the crossing. The appellee, with one Fitzpatrick, started on this job at about 7:30 a. m. on the morning of the accident, the accident occurring at about 10 a. m. The appellee owned a new Ford truck, which he had purchased shortly before for $850. After the truck was loaded with brick, the appellee, accompanied by Ed Fitzpatrick, his helper, drove east along the north side of the side track, and, when he got to the crossing, facing in a southeasterly direction he stopped. Appellee testified:

"When I left the car I started in low speed, and switched over to second going down there. I stopped, looked up and down the track, didn't see or hear nothing and started over the track. When I looked to the west I didn't see nothing, only the cars. There was some box cars on the side track. Them box cars at that time wasn't over 100 or 125 feet from the crossing. * * * After I looked I started on across the track in low gear. I was not going very fast. The next thing, Fitzpatrick made some kind of remark—he says 'my God! Look at that,' and as soon as he made the remark he was gone. I thought maybe I could make it, but I didn't stay long either. When Fitzpatrick made that remark I think the front wheels must have been on the main track. I didn't do much figuring, but I thought I could make it, but I seen it was too close to me because the smoke was at the end of these box cars and I heard the whistle. I never seen the train coming, but I seen that smoke."

Fitzpatrick, who was in the truck with the appellee, testified:

"We drove down on the north side of the side track down to the

crossing. When we got down there we almost stopped. I looked and I didn't see nothing myself. I didn't notice Mr. Bush looking. Then the truck went over the switch track. I didn't hear any whistle blown or any bell rung. I didn't hear any train coming. There is rather a sharp turn as you go onto the crossing. We crossed the switch track and before we crossed the main line track I looked up and saw smoke. I think the front wheel was probably pretty near on the main line, but I couldn't see the train then. When I saw that smoke I dug out of there. I guess Mr. Bush did the same after I told him. When I looked the box cars were between me and the direction where the train came."

The windows of the truck were down, and, when appellee stopped, he leaned forward ahead of Mr. Fitzpatrick to look to the west, and, when he stopped to listen, he heard no bell ringing at all. After the collision, parts of the truck and brick flew in all directions, and the truck body was about 150 to 200 feet southeast of the crossing after the accident. Both appellee and Fitzpatrick testified that the truck was a total wreck. The railroad from the viaduct west from the crossing is on a down grade, and the crossing is in the middle of a bend, which bends quite sharply west of the crossing. The box cars were ordinary box cars, which were about 40 feet each in length, and the car from which Bush was unloading brick was near the west end of this string of cars. The appellant's train consisted of nine all steel cars, and was one of the fine passenger trains of the Rock Island lines, with a heavy locomotive pulling it. The train was late the morning of the accident and was making up time, and, although it had slowed down for the curve, it could not stop with every brake set, including the emergency brake, until it had completely passed the Myrtle Avenue crossing with the rear end of the train one and one-half car lengths east of the crossing.

The appellant argues with a great deal of force that the appellee was guilty of contributory negligence as a matter of law. Contributory negligence is discussed quite appropriately in the case of Love v. Ft. D., D. M. & S. R. Co., 207 Iowa 1278, 224 N. W. 815, 818. This court said, in referring to the complaint by the appellant, that appellee was guilty of contributory negligence as a matter of law:

"Embraced within this question is not the problem of determining with whom the preponderance of evidence may be; rather the

situation presents the necessity of judicially saying that under the record the jury could find no evidence upon which a verdict could be based. If the appellee's own testimony is sufficient in this regard, it must be submitted to the fact-finding body; for a review of this nature contemplates that appellee's evidence shall be considered in the light most favorable to him. Consequently, when thus weighed, the record here clearly presented a jury question on appellee's alleged contributory negligence. * * * Obviously, it cannot be said, as a matter of law, the effect of appellee's actions in the premises is so conclusive of his contributory negligence that the same is 'apparent to every fair-minded and reasonable man so but one conclusion may be fairly drawn therefrom'."

Applying this rule, let us see what the record in the case at bar shows. The appellee testified that he was driving this heavily loaded truck east along the side track to the north of the main track of appellant's railroad, and that, when he reached the Myrtle street crossing, he stopped his truck and looked to the west. The point where he stopped was about 12 feet from the main line track where the collision occurred. Appellee testified that the box cars cut off his view to the west, and that the box cars were only about 100 or 125 feet from the crossing. He heard no whistle and no bell. In addition to this, he testified that it was necessary, on account of the rough crossing, driving the heavily loaded truck across the side track, for him to concentrate all his attention upon driving the truck. Fitzpatrick, who was riding with the appellee, testified that he looked to the west and that he saw no train coming, heard no whistle, and no bell ringing, and that the box cars were, in his judgment, around 150 feet from the crossing. Added to this, we have the testimony of the fireman in the employ of the appellant company who was on the engine at the time of the collision. He testified that he was on the left side of the locomotive, watching the crossing, and that he did not see the truck until they were about 250 feet from the truck, and that at that time the front wheels of the truck were on the main line track. In other words, according to the fireman's testimony, it was impossible for him to see this crossing over a distance of 250 feet and then directly down the track, for at that time the truck had reached the main line. There is, of course, evidence in the record that the box cars were a distance of 400 feet from the crossing, but there is such a dispute in the record, such a conflict in the evidence as to the location of the box cars, that it was a question for

the jury. Certainly this court cannot say that a man is negligent as a matter of law if he stops, looks, and listens when only 12 feet from the tracks, and his view is obstructed at that point. We base our conclusion upon the fact that reasonable men would disagree as to the question of appellee's right to recover.

The appellant also argues that, if the jury was justified in finding that the box cars on the side track were within 125 feet of the crossing, and constituted an obstruction to the appellee's view at the time he says he looked for the approaching train, where he knew his view was obstructed, the appellee was bound to look for the approaching of trains at a point where looking would do him some good.

In the case of Laverenz v. C., R. I. & P. R. Co., 56 Iowa 689, 10 N. W. 268, 270, this court cites the case of Artz v. C., R. I. & P. R. Co., 34 Iowa 153, with approval, as follows:

"In that case it is said that 'if the view of the railroad, as the crossing is approached on the highway, is obstructed by any means so as to render it impossible or difficult to learn of the approach of a train, or there are complicating circumstances calculated to deceive or throw a person off his guard, then, whether it was negligence on the part of plaintiff, or the person injured, under the particular circumstances of the case, is a question of fact for the jury'."

In the case of Selensky v. Railroad Co., 120 Iowa 113, 94 N. W. 272, 273, this court said:

"Whether plaintiff was negligent in assuming that she could see and hear a train, if it was approaching, without stopping, in view of the nature of the obstruction, or partial obstruction, of her sight by the weeds on the embankment, was clearly a question for the jury."

So in the case at bar. With the record showing that appellee's view was obstructed by the box cars on the siding so that it rendered it difficult or almost impossible to learn of the approaching train, the question of contributory negligence is one of fact and not of law.

The appellant requested the court to give certain instructions. The substance of the requested instructions was as follows:

Requested instruction No. 2 advised the jury that, if it found that the box cars on the side track were in fact located at the time of

the accident from 300 to 486 feet west of the crossing, appellee's failure to discover the train and avoid the collision was negligence on his part which would bar a recovery.

Requested instruction No. 4 advised the jury that it is the law that a person approaching and crossing a railroad track is bound to see and hear that which is in plain view, or would be seen and heard by a person possessing the ordinary senses of sight and hearing, and a failure to so see or hear constitutes contributory negligence and bars recovery.

The court refused each of the requested instructions. The appellant argues that the refusal to give the said instructions was seriously prejudicial to appellant's case, and cites and argues with a great deal of force that the recent case of Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 208 N. W. 356, is on all fours with the case at bar. In the Langham case the driver of the car stopped 60 feet north of the railroad track. In the case at bar the driver of the truck stopped 12 feet north of the railroad track.

In the case at bar the obstruction which prevented the appellee from seeing was not a permanent obstruction, but was a string of box cars, and there is a serious dispute in the record as to the exact location of these cars. In the case at bar we do not believe that the "physical fact" rule applies, but rather, as said in the case of Nederhiser v. C., R. I. & P. R. Co., reported in 202 Iowa 285, on page 289, 208 N. W. 856, 858:

"This case cannot be determined by the physical fact rule frequently invoked. We must adopt the reasonably prudent person rule."

In the case at bar the appellee stopped, looked, and listened at a point 12 feet from the track, and at that point his view was obstructed. There was involved a narrow, rough crossing, appellee being required to make an abrupt turn in order to pass over the appellant's railroad tracks. A string of box cars obstructed the vision around the curve. The record shows that neither the appellee nor his helper who was riding with him ever saw the approaching train. All they saw was the smoke of the engine as it came around the curve. And so, as it is not humanly possible for every reasonable person to agree, because of the nature of the crossing and the obstruction of his view, that appellee was negligent as a matter of law, the "physical fact" rule does not apply, and the question of whether

he acted as a reasonably prudent person was a question for the jury to decide.

Appellant also complains that the instruction with regard to contributory negligence was incorrect. Almost the same identical instruction was given in Albert v. Maher Bros. Transfer Co., 215 Iowa 197, 243 N. W. 561, 563. In that case this court said:

"Underlying appellant's complaint is the thought that the district court failed to tell the jury that contributory negligence which will defeat recovery is that negligence which contributes to the damage 'in any degree or in any way'. While it is true that the district court did not use the express terms 'in any degree or in any way', yet, when the instruction is read as a whole, the meaning thereof is the same as if those words had been employed. * * * Instead of using the word 'contributing', the district court in the case at bar employed the words 'co-operating' and 'instrumental'. These words, when properly utilized signify the equivalent of contributing. Likewise, there is no basis for complaint because the district court declared that the negligence which will bar appellee's recovery must contribute directly to the injury or damage."

 The appellant also complains of the instruction covering the question of damages which was submitted to the jury. The trial court instructed the jury that, if it found appellee entitled to recover, "you are instructed that plaintiff would be entitled to recover the reasonable market value of his truck immediately before the collision in question, and such reasonable market value you must determine from the evidence in this case, but in no event can you allow plaintiff more than $800."

In the case of Langham v. C., R. I. & P. R. Co., 201 Iowa 897, 208 N. W. 356, 358, this court laid down the rule:

"When the automobile is totally destroyed, the measure of damages is its reasonable market value immediately before its destruction."

The record clearly shows that the truck in question was totally destroyed, and the instruction given by the court was a correct one, considering the record in this case.

Reading all the instructions as given by the court together, and carefully considering same, we come to the conclusion that the case

was fairly tried, properly submitted to the jury, and that the judgment of the lower court must be, and it is hereby, affirmed.—Affirmed.

All the Justices concur.