HENRIETTA B. EDWARDS, Administratrix, Appellant, v. W. L. PERLEY et al., Appellees.

No. 43923.

SEPTEMBER 21, 1937.

REHEARING DENIED JANUARY 21, 1938.

Grimm, Elliott, Shuttleworth & Ingersoll, for appellant.

G. P. Linville, for appellees.

STIGER, J.—About 8 :00 o'clock on the night of February 26, 1935, plaintiff's intestate, Harold M. Edwards, was killed by an automobile, owned by defendant Perley and driven by defendant Kruger, while walking west up Indian Creek Hill on highway No. 30. This hill is long, straight, and rather steep, running due east and west, having a grade of about 6.2. There is a dirt road entering highway 30 from the north a short distance from the foot of the hill. The distance from this road, as it enters No. 30 up the hill to the Joe Pelasek residence which is situated on the north side of the highway, is about 1271 feet. The accident occurred a little west of the Pelasek residence. Snow had been removed from the pavement about two feet out on the shoulder so that a pedestrian traveling west up this hill would have about two feet between the apron of the pavement and the accumulation of snow on the. shoulder in which to walk. During the afternoon the snow melted, some of the water running from the shoulder onto the pavement. Towards evening the weather became very cold and ice was formed at places on the pavement particularly near the edges.

The decedent Harold M. Edwards and his wife were returning in their automobile from Clinton to Cedar Rapids. When they reached the bottom of the hill the gasoline supply became exhausted. Mr. Edwards parked his car on the north side of the highway and started west up the hill for aid, his wife remaining in the car. Mrs. Edwards observed her husband until

her view of him was obscured by other cars when he was about two-thirds of the way up the hill. During this time she stated that Mr. Edwards was walking on the north side of the road along the edge of the pavement where the curb joins the shoulder.

The defendant, James Kruger, worked for Perley and about 7:30 o'clock on the night of the accident he was driving Perley's one-seated panel truck from his home south on the dirt road to highway 30 on his way to Cedar Rapids. With him were his wife and brother-in-law, Loren Schrader. Kruger claimed he stopped his car before entering highway 30, then drove in low gear, then in second speed, and then in high speed and at the time the car struck Edwards he was driving between 15 and 20 miles an hour. After Kruger had turned right on 30 and had proceeded a short distance west up the hill, a truck driven by Edward Bethrum came over the crest of the hill from the west. Mr. Edwards was struck when the front bumpers of the Bethrum and the Perley cars were opposite each other.

The plaintiff's specifications of negligence against the defendant are: (a) In driving said truck at such a speed and in such a manner that he was unable to stop within the assured clear distance ahead.

(b) In failing to keep a proper lookout so as to avoid striking the plaintiff's decedent.

(c) In not operating and driving the said truck in a careful and prudent manner on the public highway so as to avoid striking plaintiff's decedent.

The court gave the following instructions, numbers 6 and 8.

"Instruction No. 6. You are instructed that it was the duty of the Defendant Kruger to observe and comply with the rules outlined *in the next preceding instruction,* and you are further instructed that if you find from the evidence that the Defendant Kruger failed to comply with the requirements of any such rules, such failure on the part of said Defendant would be negligence, and unless such failure is explained or justified by the evidence, or legal excuse appears, then you would be justified in finding the Defendant Kruger guilty of negligence, and if you further find that such negligence, if any, was the proximate cause of the accident and the resulting death of Harold M. Edwards, then you are instructed that the Plaintiff is entitled to recover from the Defendants in this cause. If, however, you

find from the evidence that the Defendant Kruger did comply with the requirements of the rules announced in the next preceding instruction, or if you find that his failure, if any, to comply therewith was not the proximate cause of the collision and resulting damage, or if you find that such failure, if any, is justified or excused by the evidence, or legal excuse appears, or if you find that the Plaintiff's decedent was, himself, guilty of negligence which contributed to the accident and resulting damage, then you are instructed that the Plaintiff is not entitled to recover in this case, and your verdict should be for the Defendants.''

''Instruction No. 8. By the term 'legal excuse' is meant:

''First: Anything that would make it impossible to comply with the standard of care fixed by the Statute.

''Second: Anything over which the driver of the automobile has no control, which places his or her car in a position contrary to the provisions of the Statute.

''Third: Where the driver of the car is confronted by an emergency not of his or her own making and by reason thereof fails to obey the Statute.''

The plaintiff-appellant attacks the above instructions on several grounds. Appellant first claims that the instructions were erroneous because no evidence that a legal excuse existed was furnished by the defendants. To determine this issue it is necessary to turn to the defendants' evidence.

Kruger, an experienced driver, testified that soon after he had turned west on No. 30 and was proceeding up the hill, Bethrum's truck, having very bright headlights, came over the top of the hill from the west. He flickered his lights to induce Bethrum to turn his lights to low and Bethrum did not respond. Kruger's headlights were on low and he was driving at the time of the accident not over 20 miles an hour because of the slippery pavement and the bright lights of the approaching truck. For about a block from the place where the accident occurred the lights of the Bethrum truck bothered Kruger and during that distance his vision ahead was limited to about 20 to 25 feet. When he got within about 15 feet of the truck he could not see *beyond the truck* at all. All the way up the hill and until after he struck Edwards his car was just north of the black line in the center of the pavement and the right wheels of his truck were about 3 feet from the outside edge of the curb or apron.

He had his lights on low with which he could normally see ahead from 75 to 80 feet. The lights from the truck interfered with his vision so that he could not see objects plainly over 25 feet as the cars approached each other. When he was about 15 or 20 feet from the Bethrum truck he could not see objects more than 20 feet ahead. At that distance he could see the truck but could not see beyond the front end of the truck. He was looking straight ahead all the way up the hill and about 15 or 20 feet from the Bethrum truck looked down at the black line in the center of the pavement. It was about 2 blocks from the place he entered highway 30 to the place of the accident. On direct examination, Kruger testified:

"Q. When you saw this object you hit, did you know it was a man you hit or not? A. It just popped out there so quick, did not give me a chance to figure what it was, seemed like it stepped out in front of me the moment I met the truck."

Kruger further testified:

"I didn't, from the time I drove on the highway until the accident, drive the car on the shoulder or the curb. I didn't know Edwards was on the pavement until just the moment before I struck him although I could see ahead from 15 to 20 feet."

The Perley car had hydraulic brakes which were in good condition and the evidence shows that a car driven from 15 to 20 miles an hour with good brakes could be stopped in 15 feet. When Kruger hit Edwards his car turned slightly to the left and he stopped it within 15 feet from the place where he struck Edwards. He then backed his car to the south side of the pavement, turned his lights across the pavement, saw Edwards, drove his truck to where he was lying, and with the aid of Schrader and others placed him in his truck and took him to a hospital in Cedar Rapids. The testimony was that a car traveling 20 miles an hour with good brakes could be stopped in 15 feet. The evidence is that Kruger was not driving over 20 miles an hour and did stop his car within 15 feet.

■■■ It was the duty of Kruger under the "assured clear distance ahead" rule to drive his car at a speed that would enable him to bring it to a stop within the distance that discernible objects may be seen ahead. Engle v. Nelson, 220 Iowa 771, 263 N. W. 505.

Kruger and Schrader testified that Mr. Edwards was struck when the Perley car and Bethrum truck were bumper to bumper. When Kruger was 20 feet from the truck he could see plainly 20 feet. The accident happened within this 20 feet. Kruger states in substance that Edwards was not on the pavement when the Perley car was 20 feet from the oncoming Bethrum car. The assured clear distance ahead for Kruger was 20 feet and he was driving at a rate of speed that would enable him to stop within this distance and, in fact, he did stop his car after he struck Edwards within a distance of 15 feet.

Schrader, who was sitting on the right side of the single seat of the Perley car, testified that he was observing the road all the way to see that Kruger did not get over to the north side and that the right fender was two feet from the north curb at the time of the accident. If he looked at an angle into the lights of the approaching car he could not see anything, but if he looked straight ahead his vision was good and could distinguish objects ahead for 25 feet and could see clearly from 10 to 15 feet. He had been looking in the direction where Mr. Edwards was struck since he first looked away from the bright lights and could distinguish objects for a distance of 25 feet and did not see Edwards until he loomed up about two to five feet ahead of the car. At that time Edwards was at least 3 feet out on the pavement and was going up the pavement with his back to Schrader and was struck by the right headlight and bumper of the Perley car. When the car hit Edwards it swerved a little to the left going partly over the black line and was stopped within 15 feet.

The plaintiff's theory is that Kruger drove onto the curb and shoulder of the highway and there struck the decedent. It is defendant's theory that Mr. Edwards was walking on the edge of the curb or the shoulder and suddenly stepped out on the pavement in front of the Perley car. There was no evidence that Mr. Edwards was walking out on the pavement as he proceeded up the hill. The accident happened just west of the Pelasek residence. For the plaintiff, Lillian Pelasek testified that she saw the car strike Edwards but could not state the position of Mr. Edwards on the highway. Mrs. Pelasek testified for the plaintiff that "the man appeared to be walking right on the side of the paving or off, I could not exactly state. I could not say exactly from where I observed whether or not he was on the apron or just to the north of the concrete apron on account of

the snow bank but he was pretty well on the side.'' George Pelasek testified for the plaintiff ''it appeared to me he was walking on the flat surface of the apron and dirt shoulder where they came together.''

Defendants' witnesses testify the car was at all times about 3 feet from the outer edge of the pavement. There are no physical facts in the record to indicate that the car was driven onto the north shoulder or that it swerved to the right and struck Edwards while he was on the north edge or shoulder of the pavement. The jury could have found from this evidence, and in accord with the defendants' theory of the case, that Edwards was walking on the shoulder or edge of the pavement until he suddenly projected himself in front of the Perley car when it was from 2 to 5 feet back of him and that Kruger, keeping a lookout, was driving his car within the assured clear distance ahead when he was 20 feet from the oncoming Bethrum car and that Edwards suddenly stepped out in front of his car within this 20 feet. There was a small abrasion of the skin over the left kneecap of the decedent and a bruise or abrasion about 2 inches in diameter on the left side of his scalp which tends to sustain defendants' theory. Plaintiff's witnesses state that the body when found was entirely off the pavement and on the north shoulder. Defendants' witnesses testified that the body was partially on the shoulder and partially on the pavement. On this record we hold that the defendants offered testimony tending to establish that an emergency confronted Kruger not of his own making and that by reason thereof Kruger failed to stop within the assured clear distance ahead and the court was right in submitting to the jury the legal excuse of an emergency.

In instruction No. 5 the court told the jury that the defendants were charged with a failure to comply with the provisions of the following statutes (Code 1931, sections 5028, 5029) :

That any person driving a motor vehicle on the highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive a motor vehicle at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

That no person shall drive a motor vehicle on the highways of the state in a careless manner and in disregard of the safety

of others or without due caution and circumspection or at a speed or in a manner as to endanger or be likely to endanger any person or property.

Appellant urges that the following clause in instruction No. 6, "such failure (to comply with the above statutes) on the part of said defendants would be negligence and unless such failure is *explained or justified by the evidence, or legal excuse appears,* then you would be justified in finding the defendant, Kruger, guilty of negligence," on the issue of legal excuse, did not limit the jury to a consideration of evidence that would meet the requirements of a legal excuse for failure to comply with a statutory standard of care as defined and delimited by this court but permitted it to consider all the evidence adduced in the case and to determine according to its own judgment and opinion whether a legal excuse existed; that is, it permitted the jury to enlarge the definition of a legal excuse heretofore pronounced by this court and constituted reversible error.

In the case of Kisling v. Thierman, 214 Iowa 911, 916, 243 N. W. 552, 554, this court defined the term "legal excuse" as follows:

"1.    Anything that would make it impossible to comply with the statute or ordinance.

"2.    Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3.    Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4.    Where a statute specifically provides an excuse or exception."

We have followed and confirmed this rule in many subsequent decisions and a justification for a violation of the laws of the road must be found within the scope of this judicial definition, which is very broad and comprehensive in its scope and was intended to and does include all the circumstances that will excuse a violation of the statutes. No other excuse is a legal excuse.

We find no evidence in the record tending to establish an excuse that is not within the scope of the definition. The only excuse offered by defendant is the justification of an emergency. The trial court properly told the jury that if the headlights of

the approaching car obscured the defendant's vision such fact would not constitute a legal excuse.

It is true, of course, that if a legal excuse is established by the evidence then it may be said that the evidence "explained or justified" the violation of the statute. The court followed instruction No. 6 by an instruction defining legal excuse. Apparently the trial court intended to use the expression "explained or justified by the evidence" as the equivalent of the expression "legal excuse".

The phrase "unless such failure is explained or justified by the evidence" has no place in an instruction of this kind and its use should be avoided. However, the possibility that the jury in reaching its verdict found some excuse for the violation of the statutes beyond the scope of the definition of legal excuse given in instruction 8 and relied on its own conception of a sufficient excuse based on evidence not tending to establish a *legal* excuse is too remote and speculative to justify a reversal.

■■■ Instruction No. 8 gave three definitions of a legal excuse. Appellant contends that the court erred in giving this instruction because there was no competent evidence in the record to establish any of the definitions of legal excuse given in that instruction.

If no evidence of a legal excuse is offered an instruction authorizing the jury to find such an excuse is erroneous. De Weese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W. 428.

The evidence clearly justified the trial court in submitting to the jury the legal excuse of an emergency.

The three definitions of legal excuse given in instruction No. 8 are not necessarily exclusive. If the jury found that Kruger was confronted by an emergency not of his own making and by reason thereof he failed to obey the statutes it could also find that the situation was something over which he had no control. (2d definition) and that it was impossible for him to comply with the statute and stop within the assured clear distance ahead. While a legal excuse of which there is no evidence should not be submitted to the jury we conclude that instruction No. 8 does not contain reversible error.

■■■ Another error relied on for reversal is the refusal of the court to give plaintiff's requested instruction on the eyewitness rule. Plaintiff contends that there was no eyewitness to the accident. Schrader and Kruger testified that they saw Ed-

wards just prior to the time he was struck and the circumstances of the accident.

The eyewitness rule is stated in the case of Merchants Transfer & Storage Co. v. Railway Co., 170 Iowa 378, 1. c. 392, 150 N. W. 720, 725, as follows: .

"The true rule is that, in the absence of an eyewitness, in the absence of any obtainable direct evidence as to what deceased did or failed to do by way of precaution at and immediately before the injury, the presumption that he, prompted by a natural instinct, was in the exercise of care for his own safety, obtains and this presumption is one of fact, and whether it is overcome by circumstances shown in evidence is for the jury to determine."

There being eyewitnesses to the accident the rule does not apply. Ames v. Transit Co., 120 Iowa 640, 95 N. W. 161; Sanderson v. Railway, 167 Iowa 90, 149 N. W. 188; Shannahan v. Borden Produce Co., 220 Iowa 702, 263 N. W. 39; Brown v. Mc-Adoo, 195 Iowa 286, 188 N. W. 7.

Plaintiff further contends that, though witnesses purported to be eyewitnesses to the accident, this would not destroy the presumption that decedent exercised due care arising from the instinct of self-preservation because the jury may not believe the witnesses and it is for the jury to decide whether or not there were eyewitnesses. Plaintiff cites no authority to sustain this proposition nor have we been able to find any authority. We do not agree with this contention.

Plaintiff further contends that the presumption may be strong enough to overcome the testimony of eyewitnesses. A reference to the above cases will disclose that this is not the rule in this state.

We find no reversible error in this case.—Affirmed.

MITCHELL, PARSONS, SAGER, and ANDERSON, JJ., concur.