MANSELL NURNBURG, Administrator, Appellee, v. PATRICK H. JOYCE et al., Trustees, Appellants.

No. 46193.

FEBRUARY 16, 1943.

· Carr, Cox, Evans & Riley, of Des Moines, and Kenneth H. Davenport, of Creston, for appellants.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, for appellee.

MANTZ, J.— This is an action at law brought by Mansell Nurnburg, administrator of the estate of Roger Nurnburg, deceased, against Patrick H. Joyce et al., trustees of the Chicago

Great Western Railroad Company, claiming in substance that by reason of certain negligent acts on the part of the agent and employees of the defendants Roger Nurnburg lost his life, and the administrator brings this action to recover damages to the estate of the deceased.

At the close of plaintiff's evidence, and also at the close of all the evidence, the defendants made motions for a directed verdict, both of which motions were overruled, and thereupon the cause was submitted to the jury, which returned a verdict for the plaintiff and against the defendants for the sum of $3,373.33, and judgment was accordingly entered upon said verdict, together with costs. The defendants have appealed to this court. For convenience, defendants and appellants are referred to in the singular.

Various grounds of negligence were pleaded by the appellee. The court submitted but two of such grounds to the jury: First, the claim of the appellee that the appellant was negligent in the operation of the train, in failing to give proper signals on approaching the crossing by the ringing of the bell; and, second, appellant was negligent in that the train was traveling at the time of the collision at an excessive rate of speed at the crossing in question.

The appellant urges that the court was in error in failing to sustain the motions for a directed verdict and by overruling the same and submitting the case to the jury.

The main argument of the appellant is devoted to its claims that the appellee failed to prove that the decedent, Roger Nurnburg, was free from negligence which contributed to his injuries and death; also that the record affirmatively shows that under the physical facts surrounding the accident Roger Nurnburg was guilty of contributory negligence; and further, that the record fails to prove any act of negligence on the part of the appellant which would be the proximate cause of the injuries and death of Roger Nurnburg.

The evidence shows that Roger Nurnburg was a farmer living about a half mile west of the town of Arispe, Union county, Iowa. He operated a 276-acre farm, 140 acres of which were on the west side of appellant's railway and 125 acres on

the east side of said railway; he had moved to said farm about March 1, 1939; he was about 51 years of age, of good health; his sight and hearing were good, and he did not wear glasses. The town of Arispe has a population of one hundred, and appellant's railway tracks run approximately north and south along the west edge of said town. There is a crossing on said railway track some distance south of the depot, and a country road leading past the home of Roger Nurnburg into the town of Arispe intersects this track.

The evidence further shows that about 9 o'clock a. m., November 12, 1939 (Sunday), Roger Nurnburg was driving alone, eastward on said highway, in the direction of Arispe. He was driving a Chevrolet automobile. As he approached the crossing on said railway, a motor train running south on the railway tracks of appellant approached said crossing and a collision ensued between said motor train and the vehicle in which Roger Nurnburg was riding, and as a result of said collision Roger Nurnburg lost his life.

In order to sustain the verdict herein it is necessary that the appellee show that Roger Nurnburg, decedent, was free from contributory negligence at and just prior to the time of the collision; also, that at the same time appellant was negligent, which said negligence directly and proximately resulted in the injury to Roger Nurnburg.

Appellant contends that under the record the evidence shows that Roger Nurnburg was guilty of contributory negligence as a matter of law, and such being the case, the court was in error in failing to direct a verdict as moved for by such appellant. On the other hand, appellee claims that under the record the question of contributory negligence of Roger Nurnburg was for the jury, and, the jury having found for appellee, the claim of appellant is negatived.

At the outset, we are confronted with the claim of appellee that appellant's assignment of errors relied upon does not comply with the rules of this court, and, in particular, Rule 30 thereof. At the close of the evidence offered by appellee the appellant moved for a directed verdict in which there were set forth fourteen items or grounds. This motion having been

overruled, it was renewed when all the evidence was in and both sides had rested. The same was overruled. Exceptions were taken to both rulings.

Grounds 1 and 3 of said motion are as follows: (1) The evidence fails to prove that the decedent was free from negligence which contributed to his injury; and (3) the record fails to prove that any act of negligence on the part of the defendant was the proximate cause of the injuries to, and the death of, plaintiff's decedent.

Rule 30 is a rule based on common sense and has for its purpose the setting out of the real errors claimed, so that the opposing party and the court may understand what is being urged as grounds of the appeal. It has been liberally construed in order to carry out its real purpose. In this case we can hardly see wherein appellee has been misled. Following appellee's claim of the failure to follow Rule 30, he then proceeds to devote about twenty-seven pages of his printed brief and argument to arguing the very point argued by appellant, to wit, the failure of the appellee to show the freedom of Roger Nurnburg from contributory negligence, and the negligence of the appellant. In such brief there are cited at least fifty cases, nearly all from Iowa, which appellee claims sustain the ruling of the trial court in submitting the cause to the jury.

We can see no merit in appellee's contention that there was no proper assignment. We believe that the appellant has sufficiently complied with our rules. Home Ins. Co. v. Fidelity-Phenix Fire Ins. Co., 225 Iowa 36, 279 N. W. 425; Smith v. Middle States Utilities Co., 224 Iowa 151, 275 N. W. 158. Many other cases might be cited.

The main point set out and argued by appellant is the claim that appellee had failed to show that Roger Nurnburg was free from contributory negligence at the time he received the injuries resulting in his death.

Under the familiar rule, the appellee is entitled to have all of the evidence viewed in the most favorable light in his behalf. To pass upon appellant's claim that Roger Nurnburg, at the time of the collision resulting in his death, was guilty of negligence which contributed to his death, calls for a review of the evidence shown by the record.

 The crossing in question is upon the main line of the Chicago Great Western Railroad Company. The railway at this point and for some considerable distance to the north runs substantially north and south and almost in a straight line, and is downgrade slightly from a point something like a mile north. At the crossing there is a double track, the east being the main track and the west being the passing track. The distance between the two tracks at the crossing was 9 feet. In addition to the two tracks mentioned there was what was known as the house track, which connected with the passing track, and the south point of this house track was from 150 to 200 feet north of the crossing. The crossing had 18-foot planks across it and was wide enough for two cars to pass. Between the planks and the two tracks cinders were placed at various times by section men. There was some evidence that the planks were worn and rutty at times. There was a depot on the east side of the tracks about 250 to 300 feet north of the crossing, and north of the depot about 300 to 350 feet was an elevator, which was 30 feet west of the main track; and on the house track and north of the elevator, were the stockyards and coal bins. These tracks were on a roadbed which was about 4 feet above the level of the surrounding ground. The west line of the right of way at the crossing is 84 feet west of the passing track. The road leading west from the crossing is downgrade for about 40 feet and there is a rise of about 4 to 5 feet in the road from a point about 25 feet west of the west crossing track to the west track.

The road runs west of the crossing about 150 feet to an "S" turn to the south of the Cheers house, which house is approximately 200 feet west of the crossing. In the Cheers yard, and south and east of the house and close thereto, stood an evergreen tree about 12 feet in diameter. There were two windows on the east side of the Cheers house and these gave a view of the depot and track and to a point a few feet north of the crossing. Just east of the Cheers house a road turned off to the north.

The crossing is for the use of a county road running west from Arispe, which is the only road directly west from said town. The road from the west goes over this crossing at a slight angle, and the left front wheel of an automobile approaching

from the west will contact the west rail of the track before the right front wheel touches it.

On Sunday, about 9 a. m., November 12, 1939, Roger Nurnburg started for Arispe by automobile. He was driving a 1935 Chevrolet car, with the car and brakes in good condition. It had been recently overhauled and had mechanical four-wheel brakes. The deceased went over this crossing from two to three times a day to two or three times a week. It was a bright, sunshiny day. The motor train came from the north and was due in Arispe at about 8 :52 a. m.

The evidence shows that as Roger Nurnburg was driving toward the crossing from the west, a train pulled by a gasoline motor approached from the north. This train made regular stops on week days but did not stop on Sundays, except on signal to pick up passengers. Some witnesses say the train was on time, others say it was a few minutes late. The evidence shows that the whistle of the engine was sounded first near the stockyards, and as it approached the crossing it gave the usual crossing whistle, two long and two short sounds. There was evidence that this whistle could be heard a mile away. After Roger Nurnburg made the turn at the Cheers house he proceeded toward the crossing and his automobile was then going at from 15 to 20 miles per hour. Three eyewitnesses say that his automobile did not stop or change its speed. Various estimates of the speed of the train run all the way from 20 to 50 miles per hour.

There is a claim that decedent's view of the track to the north was obstructed and that he, in common with others traveling, could not see an approaching train from that direction until he reached the west track. Also that the rough and rutted condition of the crossing was a diverting circumstance to the extent that he could not look up the track at that moment.

The evidence shows that the track to the north of the crossing is straight for approximately 750 feet, being over one eighth of a mile. The engine and train are all the way from 14 to 17 feet high. Appellee claims that to the north of the highway the view was obscured by bushes, sprouts, weeds, and sweet clover, but there is no evidence to show that any of such

growth is higher than 7 to 8 feet, some of the witnesses putting it at 4 to 6 feet and stating it grows to the west of the tracks.

Mansell Nurnburg, administrator of the Roger Nurnburg estate, and a son of deceased, aged 24, who lived with his father, stated that he traveled over this road and crossing frequently. As a witness he was asked on direct examination the following:

"Q. Just tell the jury how close you would have to be up there to that railroad crossing where your father was killed before you would see a train coming from the North? A. He would have to be right up onto the crossing because the view is obstructed by a tree. And it is obstructed by telephone poles and those weeds and sprouts and bushes grown up there."

On cross-examination this same witness said that the weeds and shrubbery were from 4 to 6 or 7 feet high and that there was only one tree near the crossing and that was in the yard on the north side of the road and west of the crossing. This tree is in the yard near the Cheers house and a tip of it may be seen in Exhibit 1 and Exhibit 2. This witness, when shown Exhibit 2 and asked if such picture showed the way the vicinity looked on November 12, 1939, as to the telephone poles, weeds, and the situation, answered: "I think so." As relating to Exhibit 1 he was asked the following question:

"Now, again calling your attention to Exhibit Number One, is that about the view you would have of the train coming from the North if you were, say, 150 feet from the track?" To this the witness gave the following answer: "That would be the view between 150 and 200 feet."

Dr. H. G. Beatty, of Creston, Iowa, and then deputy coroner of Union county, testified that he went to Arispe early on the morning of November 12, 1939, in response to a telephone call about 9 a. m., and he testified that he made observations to the north on the road west from the crossing to the Cheers house, making such observations to determine visibility toward the north. He said he both walked and rode. He was then asked the following:

"Q. Doctor, as you approach that crossing after you pass

the house and the tree that is in the yard there, are there any obstructions to the view toward the north up the railroad tracks, anything that would obstruct the view of a train coming down those tracks? A. There was not that morning.''

Appellant introduced in evidence five photographs, marked Exhibits 1 to 5, inclusive. The record shows that these photographs were taken on November 13, 1939, and were taken at various points in the highway west of the crossing and east of the Cheers house. In each exhibit the camera was in the center of the traveled track and was 5 feet and 4 inches from the ground. In Exhibit 1 the camera was 150 feet west of the center of the main-line track and was pointed a little east of north and shows the train 500 feet north of the crossing. In Exhibit 2, with the camera in the same location, the train is shown 300 feet north of the crossing. In Exhibit 3 the camera was 100 feet west of the center of the main-line track and shows the train 300 feet north of the crossing. In Exhibit 4 the camera was 50 feet west of the center of the main-line track with the train 300 feet north of the crossing. In Exhibit 5 the camera was 50 feet west of the center of the main-line track and the train 100 feet north of the crossing. In all of these exhibits the train and west railway track are visible and on several both tracks are visible. The administrator, as a witness, admitted that Exhibits 1, 2, 4, and 5 substantially show the physical situation as it existed on November 13, 1939.

The witness F. T. Young, who was conductor of the train, testified that directly after the accident he went west on the road up which Roger Nurnburg drove toward the crossing, for the purpose of seeing whether or not there were at that time any obstructions to the view. He testified that he went to a point some 100 feet west of the crossing and looked up the tracks. There were no obstructions to the view from that point and he states that there were no boxcars or coal cars on the track; also that from this point 100 feet from the crossing itself there was nothing which obstructed the view of a train which would be on the track, approaching from the north, and that from a point 50 feet from the tracks he could see a train approaching from 300 to 400 feet north of the elevator.

There was some suggestion in the record that there had been some change in the situation as to weeds and brush between November 12th and the time the pictures were taken; also that at the time of the accident there were some cars on the house track. The record as we read it does not bear out such claim, and in addition there was positive evidence that at the time of the accident there were no cars in the yard. Had there been, they could not have been nearer than 175 to 200 feet from the crossing.

It is the claim of appellee that the rough and rutted condition of the crossing was a diverting circumstance sufficient to distract the attention of Roger Nurnburg from the track to the north. Some of the witnesses say that the crossing was always rutty. Some say it was rutty at various times. No matter what the condition of the crossing was, the evidence shows that the deceased crossed it frequently, and he must have known when he started that morning that he had to cross it, and its condition. We are unable to see how the crossing could be classed as a diverting circumstance as claimed by the appellee.

If the view to the north from the crossing was obstructed, then there devolved upon Roger Nurnburg the duty to exercise the care and caution commensurate with the apparent danger. The physical facts show that for the 150 feet from the Cheers corner to the crossing the train could have been seen to the north at least 750 feet, or one eighth of a mile. Assuming that the train was traveling 45 miles per hour, it would require something like 13 seconds to reach the crossing if it maintained its speed. If Roger Nurnburg was traveling 15 miles per hour and did not change his speed he would reach the crossing in about 7 seconds.

We are of the opinion that the evidence shows that said Roger Nurnburg was guilty of contributory negligence as a matter of law, and such being the case, there can be no recovery under this record.

Our court has passed upon this question of contributory negligence many times. Many cases on such point have been cited and quoted from by both appellant and appellee. Ordinarily the question as to whether or not an injured party is guilty of contributory negligence is for the jury, and except in cases

where the facts are clear and undisputed, and the cause and effect so apparent to every candid mind that but one conclusion may be fairly drawn therefrom the court must submit the question to the jury. Fitter v. Iowa Telephone Co., 143 Iowa 689, 121 N. W. 48.

Contributory negligence is not a defense. Its absence is a matter to be pleaded and proven to justify recovery. Baker v. Chicago, R. I. & P. Ry. Co., 95 Iowa 163, 63 N. W. 667; Schelldorf v. Cherry, 220 Iowa 1101, 264 N. W. 54; McSpadden v. Axmear, 191 Iowa 547, 181 N. W. 4.

In this case the evidence is clear and unmistakable that Roger Nurnburg was perfectly familiar with the road and crossing, having used them numerous times; that it was but a short distance from his home; that his car and its brakes were in good condition; that his sight and hearing were good; that a train approaching the crossing from the north can be seen from a point at least 150 feet west of the crossing for a distance of at least one eighth of a mile; that there were no obstructions to the north sufficient to obscure his view in looking in that direction; that a railroad crossing is a place of known danger; that passing trains go over it regularly.

The evidence shows without contradiction that on November 12, 1939, Roger Nurnburg drove his car from the west onto the crossing where he was struck and fatally injured. Three eyewitnesses say that from a point 150 feet west of the crossing he drove without stopping and did not change his speed. In so doing he must be held to have been guilty of contributory negligence so as to bar recovery herein. See Dean v. Chicago, B. & Q. R. Co., 211 Iowa 1347, 229 N. W. 223; Darden v. Chicago & N. W. R. Co., 213 Iowa 583, 239 N. W. 531.

As we view the situation in the present case, an extensive analysis or quotations from the cases cited would serve no good purpose. Many, if not most, of the cited cases turn upon peculiar facts and circumstances appearing in the record. The rules and principles governing such are well settled and have been set forth many times, and when applied to the facts appearing determine whether or not there is a jury question. The cases, with few exceptions, turn upon this proposition. It

has ever been the rule that a person approaching a place of known danger must take cognizance of the situation then and there existing, and he cannot close his eyes and ears to what is reasonably apparent, and if he fails in this respect he must assume the blame.

It is our conclusion that the trial court erred in overruling appellant's motions for a directed verdict and in submitting the case to the jury. We hold that the evidence shows as a matter of law that Roger Nurnburg was guilty of contributory negligence, and such being the case, there can be no recovery herein.—Reversed.

All JUSTICES concur.