**MAST v. ILLINOIS CENT. R. CO.**

No. 13859.

United States Court of Appeals
Eighth Circuit.

July 19, 1949.

Oliver J. Reeve, Waverly, Iowa (Sweet & Sager, Waverly, Iowa, on the brief), for appellant.

F. H. Helsell, Fort Dodge, Iowa (Helsell, Burnquist & Bradshaw, Fort Dodge, Iowa, Swisher, Cohrt & Swisher, Waterloo, Iowa, V. W. Foster, Chicago, Ill., and C. A. Helsell, Fort Dodge, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from a judgment on a directed jury verdict in an action brought by the executrix of the estate of Harry E. Mast who was killed in a collision between a truck owned and driven by Mast and one of appellee's trains.

The collision occurred at a grade crossing in the open country north of Cedar Falls, Iowa, at about noon on a still, clear, summer day. The highway, a secondary public road, runs east and west, was constructed of gravel, and occupied a right of way 66 feet wide. The railroad line, a single track, runs approximately north and south on a right of way 100 feet wide. The crossing was surfaced with crushed rock, was in good condition, and like the surrounding country was substantially level. For 14 years prior to the accident in which he lost his life Harry E. Mast had lived on a farm situated immediately north of the public highway and east of the railroad right of way. His farm house was situated about 128 feet north of the line of the highway right of way, and approximately the same distance east of the line of the railroad right of way.

Immediately preceding the collision Harry E. Mast left his farm home, driving his Ford truck in which his two sons then aged 12 and 9 years, respectively, were riding with him. The rear of the truck was fitted with a lime box and spreader. Mast's sons were standing in the lime box with their hands on the top of the truck cab. Mast entered the public highway from the driveway on his farm at a point approximately 175 feet east of the railroad crossing, turned his truck west toward the railroad crossing, and proceeded at a speed of 15 to 20 miles an hour without stopping until the truck struck the engine of appellee's train at a point about

2½ feet back of the pilot or cow-catcher. The train was southbound.

The Mast boys sustained serious injuries in the collision from which they recovered. They brought separate actions against the railroad company, which were consolidated with this case for trial. At the conclusion of all the evidence the trial judge sustained the motion of the railroad company for a directed verdict in the case of Harry E. Mast, and submitted the cases of the Mast boys to the jury. The record shows that in the boys' cases the jury disagreed, being equally divided. The sole question on this appeal is whether there was sufficient evidence of Harry E. Mast's freedom from contributory negligence to require the submission of that issue to the jury.

Under Iowa law, which controls in this case, the burden was upon the appellant to establish negligence of the railroad company as the proximate cause of Mast's injury and death, and also Mast's freedom from negligence contributing in any manner or any degree to cause the collision in which he lost his life. This rule of Iowa law is too well established to require citations of authority. See Chicago, B. & Q. R. Co. v. Ruan Transport Corporation, 8 Cir., 171 F.2d 781, 784, a case in which this court only recently considered the pertinent Iowa cases. We are therefore concerned with the evidence tending to show the negligence of the railroad company in the operation of its train at the time and place of the accident only insofar as it bears upon the question of the deceased's freedom from contributory negligence.

The evidence on behalf of appellant was devoted almost exclusively to establishing the failure of the train crew to give the warning of the approach of the train required by the statutes of Iowa, Code Iowa 1946, § 478.19, and to proving that the view of a motorist on the highway approaching the crossing from the east was so obstructed as to make it impossible for the motorist to see a train approaching from the north until his automobile was almost on the railroad track.

The record contains the conflict usual in crossing accident cases concerning the statutory crossing warnings. On the question of the obscured view at the crossing, appellant's evidence was that the view north of the crossing was obstructed by large trees standing in the yard of Mast's home near the line of the railroad right of way, by berry and plum brush growing along the fence between the Mast property and the railroad right of way, and by tall weeds along the right of way near the track. Witnesses for the appellant estimated the height of the berry and plum brush at from 6 to 16 feet. The brush was 30 or 40 feet from the east rail of the railroad track. Estimates as to the height of the weeds varied from 3 to 8 feet. The witnesses also testified that running along the right of way at a distance of from 3 to 10 feet from the track there was a mound or ridge from 3 to 5 feet high on which tall weeds were standing. The overall height of the engine was 15 feet, 9 inches.

According to the widow of Harry E. Mast, at a point on the highway 150 feet east of the track, the view of the railroad track to the north was totally obstructed by the foliage on the trees, brush, and weeds; at a distance of 100 feet east of the railroad track, a motorist approaching the track had a view to the north of 30 to 40 feet; and at a distance of 20 feet from the track, a view of 70 to 75 feet. A brother of Harry E. Mast testified that at a point on the highway 25 feet from the east rail of the track a motorist had a view to the north of 100 feet. This witness also testified that at this distance from the east rail a motorist could see over the weeds to the north "a considerable distance." The testimony of other witnesses for appellant was to the same effect. None of the witnesses for appellant made any actual measurements, their testimony being estimates based on their familiarity with the crossing.

The evidence on behalf of the appellee contradicted, if it did not completely refute, that of appellant concerning the obstruction of the view at the crossing. An engineer in the employ of the appellee, who made a survey of the area surrounding

the crossing two days after the collision, testified that at a point in the center of the highway 40 feet east of the center of the railroad track a traveler on the highway had an unobstructed view to the north of at least one-half a mile; at a point 50 feet east, a view up the track of 650 feet; at 70 feet east of the center of the track, a view of 300 feet; and at a point 100 feet east of the crossing, a view to the north of 200 feet. This testimony based on actual measurements was supported by that of a commercial photographer, a witness for the appellee. Photographs taken on the day of the engineer's survey confirm the testimony of the engineer. At the time the photographs were taken, the railroad company sent to the scene of the accident an engine of the same type as that involved in the collision. Among these photographs was one taken at a point on the highway 42 feet from the crossing. The camera was set in the middle of the highway at an elevation 5 feet above the road surface, facing north. The engine is clearly shown in the photograph at a distance from the crossing of approximately one-half a mile. Another photograph taken under the same conditions at a point 75 feet east of the center of the track also shows the engine at some distance from the crossing. Other photographs taken by the witness and introduced in evidence reveal a view to the north far in excess of that testified to by witnesses for appellant.

Appellant's only criticism of the evidence of the railroad surveyor and photographer is that the survey made by the engineer and the photographs taken by the photographer two days after the accident did not reveal the conditions as they were at the time of the accident, because the weeds on the right of way at the scene of the accident had been broken down by persons who came to the crossing after the accident and by the removal of the wreckage of the truck from the right of way. It appears, however, that the wreckage of the truck was scattered south of the highway for distances of 75 to 200 feet from the crossing. Nothing in the record indicates that the removal of that wreckage or the inspection of the scene by the persons who gathered after the accident would have broken down the weeds north of the crossing. The brush and trees were not disturbed. It is clear from appellant's evidence that at a point 20 or 30 feet from the east rail of the track the weeds were the only obstruction to the view of a motorist. The height of the engine exceeded that of the weeds by several feet.

The trial court, however, was of the opinion that the evidence concerning the obstruction of the view at the crossing and the absence of statutory signals, viewed in the light most favorable to appellant, was so conflicting as to justify the submission to the jury of the negligence of the railroad company. But the question of the negligence of the railroad company, as the trial court pointed out, was not the decisive question in the case. For, conceding that negligence as a cause of the collision, the burden was still upon the appellant to prove Harry E. Mast's freedom from contributory negligence, and on this question the appellant offered no material evidence. All that the appellant's evidence concerning the action of the deceased at the time of the collision tends to show is that he entered the highway at a point 175 feet from the railroad crossing with which he was entirely familiar, having lived by it for 14 years and having crossed it from day to day during that time, and drove his truck into the side of an engine of a train proceeding over the crossing. We agree with the district court that there was a complete failure of evidence on behalf of appellant to sustain the burden upon her on this feature of the case.

Appellant's arguments for the contrary holding are: (1) that under the Iowa decisions the question of contributory negligence of a motorist struck on a railroad crossing, where the view of an approaching train is completely obstructed and when no warning of the approach of the train is given, is for the jury; and (2) that, conceding Mast's contributory negligence, either the doctrine of last clear chance applies; or (3) under the Iowa no eye witness rule, appellant was entitled to go to the jury, in the absence of direct evidence as to his conduct at the time of the accident.

(1) In one of the last Iowa railroad crossing cases, Kinney v. Larsen, Iowa, 31 N.W.2d 635, 638, it is said that in general the Supreme Court of Iowa has held that, where the view of the railroad track at a grade crossing, is so obstructed as to render it impossible or difficult to learn of the approach of the train, or where there is evidence of "diverting circumstances" tending to throw a person off his guard, the question of the contributory negligence of the person injured is for the jury. But this is a far cry from holding that the question is always for the jury. The cases relied on by the appellant, Meyer v. Chicago, R. I. & P. R. Co., 134 Iowa 722, 112 N.W. 194; Frederickson v. Iowa Central Railway Co., 156 Iowa 26, 135 N.W. 12; Gilliam v. Chicago R. I. & P. R. Co., 206 Iowa 1291, 222 N.W. 12; Markle v. Chicago, R. I. & P. R. Co·, 219 Iowa 301, 257 N.W. 771; Selensky v. Chicago G. W. R. Co., 120 Iowa 113, 94 N.W. 272; and Sterlane v. Fleming, 236 Iowa 480, 18 N.W.2d 159, do not sustain her contentions. In each of these cases the evidence on behalf of the injured person contains more than evidence of obstruction to the view and the absence of crossing warnings by bell and whistle· In all of them there was also evidence that the person injured looked and listened for the train, or stopped, looked, and listened; or, there being no eye witness to testify as to the conduct of the injured person at the time of the collision, the court applied the Iowa no eye witness rule, by which the injured person obtained the benefit of a presumption that he was in the exercise of due care for his own safety at the time of the accident. For example, in the Markle case the view of the driver of the automobile was completely obstructed until he had reached a point within 6 or 8 feet of the track. The evidence showed that Markle stopped his truck, leaned out of his cab, and looked both ways before going on the track. The question of his contributory negligence was held for the jury. In the Meyer case one of the injured persons survived the accident and was able to testify that they not only looked and listened, but stopped, looked, and listened on two occasions before going on the crossing where the view of the approaching train was obscured by a dense fog. In the Selensky case plaintiff who survived the accident testified that she looked and listened before going on the railroad track. She did not stop. Her view of the approaching train was obscured, and, as in the other cases relied on by appellant, there was the usual conflict as to the warning signals from the approaching train. These cases are typical of those relied on by appellant.

In the present case, accepting as established the appellant's contention that the view of the train approaching the crossing was completely obscured until Mast was within 20 or 25 feet of the track, there is complete absence of any evidence to show that he took any precautions whatever for his own safety. The record is bare of any evidence showing the presence of "diverting circumstances" at the scene of the accident tending to divert the attention of Mast from his imperative duty of looking and listening for approaching trains.

In Scherer v. Scandrett, 235 Iowa 229, 16 N.W.2d 329, 333, it is said that numerous Iowa cases "support the rule that in absence of diverting circumstances or deceptive appearances, a motorist approaching a crossing who knows his view is obstructed until he is close to the track must, in the exercise of due care, not only look when he reaches the point where looking is possible, but must then have his own vehicle under such reasonable control as to enable him to stop if necessary to avoid collision." In Darden v. Chicago Northwestern R. Co., 213 Iowa 583, 239 N.W. 531, 533, the court said: "The duty is placed on the driver of an automobile to look and listen for trains, and it was one of plaintiff's duties to look at the place where, by looking, she could have seen, and by listening, she could have heard." It is clear from all the Iowa cases that the application of the general rule mentioned in Kinney v. Larsen, supra, depends upon the particular facts of each case, and that little would be gained by attempting to reconcile on the facts the cases dealing with the question under discussion. See

Coonley v. Lowden, 234 Iowa 731, 12 N.W. 2d 870; Scherer v. Scandrett, supra; Hinken v. Iowa Cent. Ry. Co., 97 Iowa 603, 66 N.W. 882, 883; Cashman v. Chicago B. & Q. R. Co., 217 Iowa 469, 250 N.W. 111, 112; Dean v. Chicago B. & Q. R. Co., 211 Iowa 1347, 229 N.W. 223; Nurnburg v. Joyce, 232 Iowa 1244, 7 N.W. 2d 786; Carlin v. Thomson, 234 Iowa 469, 12 N.W.2d 224.

Unfortunately for the appellant in this case, she was not able to produce any evidence to sustain the burden upon her. As stated above, the most that is shown by her evidence is that Harry E. Mast was killed in a collision with a train at a grade crossing where his view of a train which approached without sounding the crossing alarm was obscured. The trial court was correct in holding that this was not enough to take the case to the jury. Harry Mast, of course, was fully aware of the presence of weeds and brush on the railway. The view obstructions were not, as appellant argues, "diverting circumstances." They were the very reverse. They were patent and imperative warnings of danger which, in the exercise of ordinary care, Mast was bound to heed.

■ (2) It is equally clear that the doctrine of last clear chance cannot aid the appellant. The Iowa rule as to the last clear chance is discussed at length in the opinion of the district judge in this case, D.C., 79 F.Supp. 160. It is unnecessary to repeat that discussion here. It is sufficient to say that the Iowa rule presupposes the negligence of the injured person; that his negligence had placed him in a position of peril; that his peril was actually discovered by the defendant; and that, after the discovery of the peril of the person injured, the other party had time by the exercise of reasonable care to avoid the injury.

■ For the application of the doctrine of last clear chance in this case, appellant must rely upon the testimony of the fireman on the engine of appellee's train. This witness, whose testimony was not contradicted or otherwise impeached testified that he saw Mast approaching the crossing at a speed of between 15 and 20 miles an hour at a time when the truck was between 100 and 125 feet from the crossing and the railroad engine was within 200 to 250 feet from the crossing. He continued to observe Mast as the train and the truck approached the crossing. He saw nothing to indicate that Mast could not or would not stop before going upon the track, until the truck had reached a point within 20 feet of the track, and the engine was within 30 feet of the crossing. During the time the witness observed the approaching truck, Mast neither decreased nor increased its speed, nor in any manner altered its course. Immediately upon the fireman's discovery of the probability that Mast was not going to stop, he warned the engineer who applied the brakes in emergency but was unable to avoid the collision which followed. The burden was upon the appellant to prove that the fireman not only actually discovered the peril of Mast, but that after the discovery there remained time for the engineer in the exercise of ordinary care to have avoided the collision. Arp v. Illinois Central R. Co., 230 Iowa 869, 299 N.W. 413, 414. Nothing in the evidence tends to sustain this burden.

■ (3) Appellant's reliance on the Iowa no eye witness rule is misplaced. That rule is a corollary to the peculiar rule prevailing in Iowa which placed the burden upon the appellant to prove the freedom of Mast from negligence contributing in any manner to cause his death. Ames v. Waterloo & C. F. Rapid Transit Co., 120 Iowa 640, 95 N.W. 161, 162. Briefly stated, the rule is that, in the absence of an eye witness who can testify as to the actual conduct of the injured person at and immediately before his injury, the presumption is that he was in the exercise of ordinary care for his own safety. Edwards v. Perley, 223 Iowa 1119, 274 N.W. 910, 915. An eye witness within the rule is a witness who saw and observed the injured person during all the material moments preceding his accident. Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19, 22; Graby v. Danner, 236 Iowa 700, 18 N.W.2d 595. The burden is upon the one invoking the no eye witness rule to prove

that there is in fact no eye witness or other obtainable direct evidence relating to the conduct of the person injured. Low v. Ford Hopkins Co., 231 Iowa 251, 1 N. W.2d 95. In the present case the court ruled that the fireman was an eye witness within the meaning of the rule. We cannot say that his ruling was contrary to Iowa law.

■ It is also to be noted that the two Mast boys, who had reached the ages of 15 and 12 years, respectively, at the time of the trial were not offered as witnesses. During the trial no attempt was made to show that they were not competent eye witnesses. They were present in court at the time of the trial as plaintiffs in their own cases. The appellant in this case is not entitled to the benefit of both the doctrine of last clear chance and the no eye witness rule. For, under the doctrine of last clear chance, it was necessary for the appellant to prove that the fireman was an eye witness of the conduct of Mast during the material moments preceding the collision, while in order to obtain the benefit of the no eye witness rule, the appellant was under the burden of showing that the fireman did not see or observe the actions of the deceased during material moments.

■ In testing the ruling of the trial court on the questions of Iowa law controlling on this appeal, the rule governing this court as stated in Russell v. Turner, 8 Cir., 148 F.2d 562, 564, seems peculiarly appropriate: "The considered opinion of a trial judge as to a question of local law may properly be accorded great weight by this court. It will not adopt a view contrary to that of the trial judge unless convinced of error. Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Roth v. Swanson, 8 Cir., 145 F.2d 262, 266, 268; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Ass'n v. Chamberlain, 8 Cir., 148 F.2d 206. This does not mean that an appellant, in order to obtain a reversal of a judgment in a case such as this, must demonstrate error to a mathematical certainty, but it does mean that this court will not overrule a decision of a trial judge upon a ques-

tion of state law except for cogent and convincing reasons. Compare Yoder v. Nu-Enamel Corporation, 8 Cir., 145 F.2d 420, 423–425; Roth v. Swanson, supra, page 269 of 145 F.2d; Anderson v. Sanderson & Porter, 8 Cir., 146 F.2d 58, 62. All that this court reasonably can be expected to do in reviewing cases governed by state law is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the law."

The opinion of the District Court in this case is reported in 79 F.Supp., pages 149–175, inclusive. The evidence is stated in minute detail, in the light most favorable to appellant. The Iowa cases from the earliest to the latest dealing with every question of law material to the decision in the case are carefully and critically analyzed. Our study of the Iowa cases has convinced us that the challenged rulings of the trial judge are in accord with Iowa law.

The judgment is affirmed.